IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 13, 2004

## DEMETRIUS CURRIE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Tipton County**
**No. 4276     Joseph H. Walker, III, Judge**

---

**No. W2003-01201-CCA-R3-PC  - Filed June 8, 2004**

---

The petitioner, Demetrius Currie, pled guilty in the Tipton County Circuit Court to two counts of especially aggravated robbery and one count of especially aggravated burglary.  The petitioner received a total effective sentence of sixteen years incarceration in the Tennessee Department of Correction.  Subsequently, the petitioner filed for post-conviction relief, alleging that because counsel failed to correctly inform him of his release eligibility percentage, counsel was ineffective and the petitioner's guilty pleas were not knowingly and voluntarily made.  After a hearing, the post-conviction court denied the petition, and the petitioner appeals.  Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

J. Barney Witherington, IV, Covington, Tennessee, for the appellant, Demetrius Currie.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and James Walter Freeland, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

The petitioner was originally charged with attempted first degree murder, especially aggravated robbery, and especially aggravated burglary.  However, after plea negotiations, the petitioner pled guilty to two counts of especially aggravated robbery and one count of especially aggravated burglary. The State agreed to dismiss the attempted first degree murder charge. The plea agreement further provided that the sentences imposed would run concurrently; however, the length of the sentences was left to the trial court's discretion.

At the guilty plea hearing, the State recited the following stipulated factual basis for the pleas:

> [O]n August 24th, 2001, Mr. Freddie Jackson and Demetrius Currie were with Kevin Chaney in a vehicle. Mr. Chaney dropped them off at 217 Boals Street, each went into the home of Mr. William Lyle Jones, each had a pistol. They had Mr. Jones lie down on the floor. And there was also a Gerald Conley in the residence at the time. Mr. Conley was taken off the couch where he was sleeping and beaten. Mr. Jones was robbed of his wallet, $65 cash, and then he was shot in the back three times. According to the witness statements, Mr. Jackson and Mr. Currie then fled the residence, and Mr. Jackson admitted – or made the statement on several different occasions that he was the killer.

After the recitation of facts, the petitioner waived his right to a trial and stated that no one was forcing him to plead guilty. The petitioner told the court that he had reviewed the plea agreement forms with his attorney and understood the plea. The trial court informed the petitioner, "The especially aggravated robbery is the type of offense that requires service of a hundred percent under T.C.A. 40-35-501." Next, the trial court asked the petitioner if he was satisfied with the representation of counsel, and the petitioner replied in the affirmative. The petitioner then entered his guilty pleas in open court. Subsequently, the trial court sentenced the petitioner to concurrent sentences of sixteen years incarceration on each especially aggravated robbery conviction and to eight years incarceration on the especially aggravated burglary conviction. The trial court further required the petitioner to serve one hundred percent of his especially aggravated robbery sentences in confinement.

Thereafter, the petitioner timely filed a petition for post-conviction relief. In his petition, the petitioner alleged that counsel did not inform him that he would be serving one hundred percent of his sentences in confinement. To the contrary, the petitioner entered his pleas believing that he would be serving thirty percent of his sentences in confinement. Therefore, the petitioner contended that he received the ineffective assistance of counsel, and that his pleas were not knowingly and voluntarily entered.

At the post-conviction hearing, the petitioner testified that he met with trial counsel two or three times for durations of ten minutes to twenty minutes. At one of the meetings, counsel and the petitioner discussed entering guilty pleas. The petitioner maintained that counsel informed him that it was not likely that he would "win at trial." Further, counsel cautioned the petitioner that he could be held criminally responsible for the actions of his co-defendant, Freddie Jackson. The petitioner explained to counsel that he did not shoot victim Jones. Counsel asserted that because the petitioner admitted to police that he went to the residence with the intent to rob, he and Jackson could be found equally culpable for the shooting. The petitioner conceded that he had given a statement to the Covington Police Department saying that he went to the residence to commit a robbery, and, while there, Jackson shot Jones.

The petitioner recalled that counsel advised him that he was facing a twenty-year sentence for especially aggravated robbery. Counsel further advised the petitioner that if he proceeded to trial, he was potentially facing a total effective sentence of thirty to fifty years if the sentences were "stacked."

The petitioner asserted that he had the ability to read and write, having completed the tenth grade. He stated that the plea agreement form he signed prior to the guilty plea hearing led him to believe that he would have to serve only thirty percent of his sentences. However, he admitted that the plea agreement form did not specify a percentage of service. In fact, the petitioner acknowledged, "It wasn't no percent discussed."

The petitioner conceded that at the guilty plea hearing, the trial court informed him that an especially aggravated robbery conviction required service of one hundred percent of the sentence. However, the petitioner argued that he had already signed the plea agreement form prior to the hearing.

On cross-examination, the State asked the appellant when he first realized "that there were some felonies that carried 30 percent." The petitioner responded, "I looked – looked in a law book [in the penitentiary], find out most of my stuff, most of the things I know." The petitioner acknowledged that during his review of the law, he learned that a conviction of especially aggravated robbery required service of one hundred percent of the sentence in confinement.

The petitioner's trial counsel testified that his records revealed that he met with the petitioner six times, with the meetings lasting anywhere from ten minutes to forty-five minutes. During these meetings, counsel and the petitioner discussed the facts of the case, possible defenses, and strategy. Counsel stated that from the beginning of the case, he recommended that the petitioner seek a plea bargain. Counsel explained that the shooting victim, Jones, was in critical condition. He feared that Jones would die, and the petitioner would face first degree murder charges which could lead to a death sentence.

Counsel stated that his three main concerns with the case were solved by the petitioner's guilty pleas. First, counsel wanted "to plead him as soon as possible in case the man did die, then he's facing the electric chair." Second, the plea agreement provided that the attempted murder charges would be dismissed, "which I think the proof was clearly he was also criminally responsible for that." Third, the agreement provided for concurrent sentencing, obviating the concern of a lengthier sentence. In sum, counsel opined, "I thought this was a good plea arrangement, especially considering he confessed to being there, confessed to having a gun, and one of the victims testified that Mr. Currie, even though he didn't shoot him, pistol whipped him." Finally, counsel admitted that he could not specifically recall discussing service percentages with the petitioner; however, he was "confident" that he discussed all aspects of sentencing with the petitioner.

After the post-conviction hearing, the post-conviction court entered a written order dismissing the petition. The court specifically accredited the testimony of counsel and found that counsel "provided adequate assistance." Further, the post-conviction court stated:

> Petitioner failed to show any deficient performance by [counsel] or that he was prejudiced. Petitioner was not happy with the sentence received, or the percentage of service. However he was adequately warned of the possible range of sentence and the percentage of service. The entry of a plea of guilty to avoid the risk of a greater sentence does not make a plea involuntary.

On appeal, the petitioner contests this ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997).[1] "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for

---

[1] Since the post-conviction hearing in the instant case, this provision has been codified at Tennessee Code Annotated section 40-30-110(f) (2003).

counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985).

The petitioner claims that, prior to his signing of the plea agreement, he believed that he would only be required to serve thirty percent of his sentence in confinement. However, the post-conviction court specifically accredited the testimony of the petitioner's trial counsel who stated that he believed that he discussed release eligibility with the petitioner prior to his pleas. See Terrell Burgess v. State, No. W2002-00826-CCA-R3-PC, 2003 WL 21645148, at *7 (Tenn. Crim. App. at Jackson, July 2, 2003), perm. to appeal denied, (Tenn. 2003). Counsel further stated that he warned the petitioner that he was facing a lengthier sentence if he were to be convicted at trial. Counsel maintained that on his advice, the petitioner entered into a favorable plea agreement. From our review of the record, we conclude that the petitioner has not proved deficiency or prejudice by clear and convincing evidence.

Moreover, the petitioner claims that his guilty pleas were not knowingly and voluntarily entered because he was misled about the percentage of his sentence that he would have to serve in confinement. As we earlier noted, counsel's accredited testimony reveals that the petitioner was informed about his sentence and release eligibility prior to entering his pleas. Moreover, the transcript of the guilty plea hearing reflects that the trial court informed the petitioner that a conviction of especially aggravated robbery required service of one hundred percent of the sentence in confinement. See Ross Gunter v. State, No. E2000-00747-CCA-R3-CD, 2001 WL 348331, at *4 (Tenn. Crim. App. at Knoxville, Apr. 10, 2001). After being so warned, the petitioner told the court that he understood his pleas and wished to plead guilty to two counts of especially aggravated robbery and one count of especially aggravated burglary. We conclude that the petitioner's pleas were knowingly and voluntarily entered.

### III. Conclusion

Accordingly, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE